Good morning, Your Honors, and may it please the Court. Kelly Perrigo on behalf of Appellant Robert Carrasco Gamez. With the Court's permission, I'd like to reserve three minutes for rebuttal this morning. Appellant Robert Gamez is an inmate in Arizona State Prison where he has been in solitary confinement for two decades. Can I, forgive me, but I'm really distracted by this. I've read ten years, I've read more than ten years, I've read eighteen years. Why is there discrepancy about that? So, I think it has to do with when the statements were made in the record, but my understanding from Mr. Gamez is that he has been in solitary confinement throughout his entire time in prison, and that is not something that's been disputed. Okay, I get that it's not disputed, it's just reported differently, but you think, I'll check with the opposing counsel, you think we should understand twenty years? It's about twenty years by this point, yes, in 2020. And do we know why he's there? Is it straight disciplinary reasons, or has he got gang status? I do not believe he has gang status. I believe it is based on behavioral issues. Do you know how often he's being re-evaluated? I do not know how often he is being re-evaluated. Do you know what ADOC's policy is on re-evaluating disciplinary? No, I don't believe that that is in the record, although I know that the ACLU action that resulted in a judgment against the ADOC does indicate that there have been issues with the conditions of solitary confinement and the frequency of review. So, despite being in serious mental health issues and undergoing an involuntary change of medication, and despite having his voluminous legal record seized for nearly a year, Mr. Gomez and Pro Per was able to put together a complaint that passed screening under 28 U.S.C. section 1915a because he'd stated a claim. But Mr. Gomez knew that his 1983 claims and his medical malpractice claims were too complex for him to litigate on his own. And that's why he moved for appointment of counsel repeatedly on four separate occasions so that he could have counsel help him build his evidentiary record, help him navigate complex legal issues like Bivens and qualified immunity and Monell, and help him support his complex medical claims through expert testimony. Did he ever say that he needed counsel to assist with an Eighth Amendment claim stemming from the solitary confinement or the medical, what you're calling medical malpractice? I'm going to say that. I read the record to say that that's about pain management, pain medication. Yes, just to clarify, I think there's the Eighth Amendment deliberate indifference claim and then also a separate state law medical malpractice claim. And in addition to that, his motions for appointment of counsel do reference his prolonged isolation as well. I asked a slightly different question. Did he ever say he needed counsel to assist with the prolonged isolation, the solitary confinement claim? I don't think that his motions are specific as to which claims he needs assistance with. He's talking just generally about litigating his action. Okay, I couldn't find it either, but it wasn't a trick question. I just want to know if you found it. Judge Vitaliano. Thank you, Judge Grist. Is there a separate, did he try to state a separate claim about the solitary confinement, unconnected to the medical indifference claim? He did, Your Honor, and I think that that's evident from the complaint. And certainly it could have been clearer, and I think that that goes to the reasons that he draw Your Honor's attention to in the complaint. The first is the prayer for relief, which specifically asks for abolishment of solitary confinement, which doesn't make sense as relief for an Eighth Amendment deliberate indifference claim or a medical malpractice claim or his First Amendment claim. The second is under the Count 2 Eighth Amendment claim, there are several allegations that are specific to prolonged isolation, and that's in paragraph 65. Do you want us to be looking at ER 677, 678? Is that where the part of the, so you know, part of the ones that are screened or scanned have the left margin cut off, so at least on mine it's kind of hard to see the I think 65 begins on ER 667. It doesn't. It doesn't on mine. It's on 678. That's what I've got. Sorry, thank you. 678. Not at all. I just wanted to be clear. You mentioned there are several paragraphs. Are there others we should be looking at? Yes, so I'll start on 677 paragraph 63. Furthermore, Ryan, Pratt, Kurizon, Rastogi, and Osgood have failed to provide me with adequate mental health services. Then it goes on to say the devastating psychological and physical effects of isolation have caused significant physical pain and psychological harm, and then says that those adverse health effects are in violation of the Eighth Amendment. So that is specific to the isolation claim, independent from the medical indifference claim. And then paragraph 64, Ryan, Pratt, Kurizon, and Crabtree do not place a cap on the amount of time I'm required to spend in isolation. But note here it says I've spent 10 continuous years in solitary confinement. We don't need to go off on that, but it hints the confusion. Understood, Your Honor. So is this the page where I read the allegation that the periodic reviews, Judge Ivey was referring to, that your client considers them to have been a sham? Did I read that here? Yes, that's the next sentence in paragraph 64. And so he's indicating that the periodic reviews violate substantive due process because they're perfunctory, shams, and meaningless. And then there's the next paragraph, the fact that Ryan, Pratt, Kurizon, and Crabtree do not place a cap on the amount of time I spent in isolation raises serious question if periodic reviews are conducted with preordained outcomes. And then there's another reference to solitary confinement in paragraph 68. I think it's clear the way these are phrased that this is an independent claim that is not solely window dressing, as defendants would say, for the deliberate medical indifference claim. Not just because of the prayer for relief in these allegations themselves, but also because defendant Stacey Crabtree is named in this count. She, according to her declaration, had nothing whatsoever to do with the provision of health care to Mr. Gomez. Instead, she was someone who was responsible for evaluating his request for reclassification. The district court just assumed that she had been misnamed in this count rather than reading this count as including a separate claim challenging his prolonged isolation for which defendant Stacey Crabtree was named. I think the court's case law is clear that in deciding motions for appointment of counsel, the court needs to consider at least two factors, one being the likelihood of success on the merits and the other being the plaintiff's ability to articulate his claims in light of the complexity of the issues involved. Here, both factors weigh in Mr. Gomez's favor. First, the court in screening his claims acknowledged that they stated a claim for relief. This court has consistently found that when allegations state a claim for relief, that factor weighs in favor of appointment of counsel. It's not dispositive, but it's one of the factors. And then claims involving medical care have also been recognized by this court time and again as being complex and requiring assistance of counsel. Well, some claims, not all. But I do think that these in particular are complex. And I think that the Peretti case is instructive on this in that that case involves very similar allegations. And with appointment of counsel and with the expert that the plaintiff was able to procure in that case, he was able to show that Wellbutrin, which is the same drug at issue here, actually did not, was not a drug that there was a significant risk of abuse in the prison system and that it was an appropriate drug for him to be prescribed in that case. And I think had there been counsel and an appointment of expert or an expert here, Mr. Gomez may well have been able to make that same showing. I want to go back to the district court's denials of the motions. They are the first denial only recites the standard for appointment of motion for appointment of counsel and then goes on to say that he hasn't met that standard. And just gives one reason, which is that he's not differently situated than most proper prisoners. And I think that that is both not enough reasoning under Wright and Clemens where ignoring the likelihood of success on the merits factor was enough for the court to reverse. Counsel, your time is going quickly, and I appreciate all the comments about counsel. But even if I were inclined to send this back on counsel, I might also be inclined to try to clean this up a bit where I can. So can you turn to the substance? I'd like you to turn to the to the to the Eighth Amendment claims. Absolutely. So I think on the I don't want to spend too much more time on the prolonged isolation. I would just say that I think that that that claim is has been asserted in the complaint and the complaint should be construed liberally and summary judgment should not have been granted across the board without. Eighth Amendment. Oh, sorry. I thought I would understand the deliberate indifference claim. I think that here we see that there is a dispute of material fact on the defendant's evidence alone. So we had the the declarations of Drs. Rastogi and Dr. Dr. Elijah and both indicated that the drugs that issue Tramadol and Wellbutrin were discontinued, according to an administrator that there was an administrative error. Administrative policy against prescribing those drugs. They also specifically attested that they had no insight into horizons, policies and practices or their finances. So there was no evidence in the record that that to refute that these administrative policies were, in fact, a cost saving measure as opposed to some legitimate reason. And then as to Dr. Elijah says that the tramadol should not be prescribed over long periods of time had been prescribed for quite some time, that there were good alternatives. And it appears to me that the dispute over the claim of dispute over material fact has to do with how long she saw him and whether she reviewed his medical records. This looks like this could just be a dispute over medical treatment. That's a state claim. It's not an Eighth Amendment claim. So how do we get to an Eighth Amendment claim with respect to Dr. Elijah? So I think this is more than a dispute over his treatment, because the the record shows that on March 4th, he was he was seen by a doctor and the doctor specifically instructed him to continue with his tramadol treatment. So they the doctor saw him and sort of reaffirmed that that was an appropriate treatment. Then just three days later, due to an appointment that he did not request, the tramadol was then discontinued. So I think this is much more along the lines of Peretti. Why doesn't it fall within the case law? And we've got a lot of it that talks about, you know, differing medical opinions do not suffice. So why is this different? Well, because it's the it's the the prison doctors themselves having an about face with no particular no described reasoning that there's no reason that they're to explain. I don't mean to interrupt one physician. This is what I'm trying to get at. If you could respond, because this is my problem with the case with this part of the case. It's what Judge Bybee is just referring to. Right. One physician prescribed one physician said there this this in that person's professional opinion shouldn't be prescribed over an extended period of time. And there are reasonable alternatives. So so why doesn't that fall within the case law that you know so well where we just have conflicting medical opinions? Well, Your Honor, I think that this is much more of a situation where we have over the course of a year, we have repeated visits with with doctors where the tramadol is refilled and we don't have any indication that there was any side effect from the continued use of it. In fact, it was it was reaffirmed that it should be used on the just three days before. But let's let's suppose let's suppose the horizon working working with ADOC determined that there might be some value in reducing patients who were receiving tramadol because it had some kind of secondary market within the within the prison system. That's not an irrelevant reason. And doctors might be counseled to reduce tramadol use where possible. But what what tells us that Dr. Elijah's one visit in which she determines and says, as as a medical matter, there are alternatives here and I don't recommend having tramadol over this period. Now, what makes that an Eighth Amendment claim? One one visit and all of a sudden we're to deliberate indifference. No, Your Honor. I mean, I think that the I think that the reason there's a dispute of fact there is that there was evidence in the record that the the other painkillers that they had tried had not been sufficient for him. Well, that's what he that's what he said. Now, she offered a number of things that I didn't see those anywhere else in the record. So a number of the things that she mentions that she offers him and he declines. I haven't seen any other reference to. So it's not at all clear to me that he knew what those medications were. Understood, Your Honor. I think I would go back to the to the timing here and that it was just three days prior that. And but what makes a one visit with a doctor who then says, I saw him, I reviewed his records and I don't think he needs the tramadol. I offered him other things. He became belligerent. He told me he didn't want those things. And I had to close this out for my own safety. What makes this an Eighth Amendment violation as opposed to a difference of medical opinion and and to which there may or may not be a state court remedy? We're talking about a constitutional remedy here, and that's a very high standard on the Eighth Amendment. Isn't there isn't there also a declaration that the doctor's advice was based on a direction to, in effect, notwithstanding what the medical conditions might be, don't prescribe tramadol? Yes, Your Honor, I think there is evidence in the record that there was an administrative policy both on the Wellbutrin and the tramadol. But again, I would I think that that's part of the claim is that that administrative policy was based on financial reasons and not based on an individualized determination and not a disagreement about what the medication should be. Correct, Your Honor, and I think that's clearest with respect to Wellbutrin. So you're over your time, so I know I'm interrupting, but can I summarize it? My understanding, and I want you to correct me if I'm wrong because it would just save time. My understanding is your claim is that it wasn't a difference of medical opinion. It was a medical opinion and there was a profit motive on one side so that it wasn't purely a medical judgment. Is that a fair summary? Yes. Okay, we've taken you way over your time, and I also interrupted Judge Vitaliano's question, I think. I got an answer. Did we get there? Okay, Judge Bivey? I would like to hear about Dr. Rastogi before you sit down. Okay, thank you, Your Honor. With respect to Dr. Rastogi, I would just direct the court to the portions of the Dr. Rastogi declaration in which she explains that the prescription of Wellbutrin was safe and appropriate for Mr. Gomez. She says that she disagrees with taking the prescription down and that he wasn't exhibiting any adverse effects, that it was working well. To me, this makes us much closer to the Peretti case where we have an appropriate medication that everybody agrees was appropriate, and then suddenly it's taken away based on an administrative policy in the face of evidence that this was clearly an appropriate medication. Do you understand her statement to be when you said disagrees with taking Wellbutrin down? Can you explain what you meant? Sorry, that wasn't very clear. She's talking about how Dr. Rawa changed the quantity of Wellbutrin. Right, okay. As opposed to there's an administrative decision to take this type of medication off the menu, so to speak, in this prison environment. You're not speaking to that. You're attributing to this witness the decision to drop the dosage, a difference of opinion about that. Is that right? Correct, but I think the reason that it's relevant is that we have the state's own witness saying that this was an appropriate and safe medication. I understand the relevance. I'm just trying to understand what you just told me when you said take it down, and I think you explained that quite well. I'm not sure you were done answering Judge Bybee's question, were you? No, I just wanted to. I guess I'm still curious. Let's suppose the prison made a very conscious decision, and let's suppose that it was discipline related, not specific to your client, but to the prison as a whole, that there were reasons not to have Wellbutrin circulating in the prison or Tramadol circulating in the prison. Is that irrelevant? No, Your Honor, I don't think it is irrelevant, but that's something that Mr. Gomez wasn't able to explore through discovery. But why would that be a claim against the doctor? If the doctor says we can safely reduce this, and I do this in a medical judgment subject to these constraints imposed by the prison because of disciplinary concerns, what makes that an Eighth Amendment violation? Well, I think it might be an Eighth Amendment violation as to Corizon, who's making that policy. That may be. I think that's much closer. I don't understand why Dr. Elijah and Dr. Rastogi are in the case. Well, I think that's a fair point. And, again, I think this is where an appointment of counsel would help sort of sort these things out and who the claims should be asserted against. Well, the question is whether or not there should be an affirmance with respect to Dr. Rastogi. Yeah, I think – look, I think that the – I completely agree with Judge Bybee, and I think that the claim against Corizon is a very strong claim here where we do have Corizon setting the policies and practices here. I agree Dr. Rastogi was prescribing wellbutrin because she thought that it was a safe and effective treatment. But she also thought that it was related to his insomnia, so there was a very good medical reason to reduce it. Yes, Your Honor, although I think – and I can – if I'm permitted rebuttal, I can point to a portion of the record where I think that – Quickly, please. You're five minutes over your time, so – Yes. Okay. Did you want to say something now or are you ready to wrap up? No, that's fine. I can – Okay. We'll see you in a few minutes. Thank you, Your Honor. For planning purposes, when you come back, we'll put two minutes on the clock. Thank you. Sure. We'll hear from opposing counsel, please. Good morning. If it may please the Court, I'm Scott Conlon. I'm here on behalf of Appellees Corizon, Pratt, Ryan, and Elijah. I'll try to address the basic issues, at least in order of which they were raised in the course of the appellate document. Obviously, the first going to the allegations of – excuse me, to the denial of the motions for provision of counsel. I think it's been overstated or understated just what was addressed in ER 54, which was the screening order, which talked about whether an attorney was going to be appointed. The Court actually did identify the specific issues raised by Mr. Gamez, and it certainly identified them. Inability to afford counsel. Issues are complex in his opinion. Access to the law library, he claimed, was limited, and he had pain in his hands. He may have faced discovery issues. The claim itself, as already, I think, identified, was a disagreement or, in Mr. Gamez's case, a claim that he was unconstitutionally denied the medications that he thought were appropriate for him. Well, it's not limited to that. That's the question. For me, just to be candid so you can use your time accordingly, but at least my read of the record is that the appointment of counsel calculation changes a lot, depending on what kinds of claims he's raising. And if he's raising a claim that really just is a difference of medical opinion, that's one thing, and we see those a lot. There's two other areas, though, that seem to be worth exploring. And one is that the physicians involved had a difference of opinion about the medical care, but also there's this administrative decision that was made to take a certain medication out of play, so to speak, and that would be a different defendant here. So then you'd be talking about amending to add a different defendant. The other issue is that it seems that the district court didn't recognize and could be forgiven for not recognizing this handwritten complaint, but be that as it may, we now see, with our 2020 hindsight, that there's an allegation here about this prolonged solitary confinement. So if those two claims were recognized in the complaint, does the calculation for appointment of counsel change? Well, let me address that in a couple of ways. One, I understand the thinking that the claim could be that if you're saying that there was an administrative issue, there may be that, as with the Department of Corrections, but Corizon is a defendant in this case, and Corizon has to exercise their own medical judgment. And while there may be some administrative issues, I believe it was part of what the declaration of perhaps Dr. Elijah. So, yeah, recognizing it's a dangerous drug, recognizing it's narcotic, recognizing that there were issues with the use of it. I'm not trying to suggest that the right defendants weren't there. What I'm trying to suggest is that he's pro se, he's in solitary confinement as far as we can see, right, and as far as the district court can see, he's detained. So I don't know that he's got the right defendant. I don't know that he's got a bunch of stuff that lawyers would need to look at. But he does have an allegation, two allegations that are of concern, because deliberate indifference claims can be made when there's a conscious decision to continue on a course of treatment that's going to unnecessarily subject an inmate to unnecessary pain. We all know that. So whether it's a physician doing that or an administrative concern, my real question is doesn't that change the calculation when we look to appointment of counsel? Well, again, trying to go back to the first one, the idea of there being an administrative determination that the medication shouldn't be used. First of all, it's mentioned, but second, I believe it's also mentioned in perhaps the declaration of Elijah that they're not talking about eliminating but talking about really determining where it needs to be used. And, of course, it's already been discussed here. Dr. Elijah made separate determinations based upon that. One, that the tramadol was only for a limited amount of time. Two, she looks at the medical record, which is part of the medical record she writes. It shows a history of diagnoses for Mr. Gamage. We could definitely look at this record and say this person got a significant amount of care, no question. So the issue we're looking at is whether or not there was really something to get past summary judgment as opposed to just a difference of medical opinion. Right. And when it comes to that, it appears that the bases that were stated by Dr. Elijah were certainly sufficient to get through summary judgment because it's an exercise of medical judgment. And ultimately, whatever the rule may be on tramadol, there's no indication that it's to be completely not provided system-wide. So Arizona is not contending that tramadol is not permitted, that you can't prescribe tramadol in prison? No. How about Welbuterin? Welbuterin, yeah. As a matter of fact, I didn't even believe that that was even a non-formular issue. It was just curious that the timing on this was March of 2017 and the Peretti case out of Nevada looks like that Nevada made a similar decision about Welbuterin about the same time. And it was a system-wide decision. So I'm just wondering whether there was something circulating in the prison community in 2017 that suggested that Welbuterin had become a drug on the secondary market in prisons. Your Honor, at the risk of going a little off the beat a little bit, I think around that time in 2016 was a time there was a big national issue regarding the potential abuse of narcotics, and I think a lot of the state agencies handled things differently. To my knowledge, and also on the record, I know of no absolute prohibition of tramadol. There's a question of are we using it with the people who need to be using it or we need to take extra care to look at who we're giving it to and the reasons we're giving it for. In this case, that's one issue. But wasn't there a – I don't want to say system-wide, but there's evidence here that the care providers may have been making a decision because they were coming through and concerned about long-term use of these medications, right? And this person had long-term use of this medication. Yes. Yeah, so that was not necessarily specific to him. It was a directive to, I think, more broadly look at a concern concerning long-term use. Right, there was long-term use, and then his symptoms didn't appear to be the sort of thing which at the time tramadol was provided and that there were more appropriate, in Dr. Elijah's opinion, medications which could be prescribed. So I think we're reading the record the same way, and this seems to be a little bit of a tangent. So getting back to the point, you wanted to start with appointment of counsel, and I think we've kind of explored that, and I think you're going to agree because the test encompasses the point I'm really making, which is that that changes, that calculation changes depending on the complexity of the issues. So one issue that may or may not be in the complaint, I'd love to hear your response, is this issue about long-term solitary confinement. Do you agree that that would change the calculation? Or maybe we're going to hear from your co-counsel on that. Your Honor, I'm looking at that, and I'm looking at specifically, I think it's ER 675, which is Count 2 identifies denial of medical care, let's see, cruel unusual, and it goes to the idea that they didn't provide me medical care. And then that's the vast majority of the allegations. And then you go to 63, which is on ER 677. Furthermore, I wasn't provided with adequate mental health services throughout my placement in severe isolation. Right. So the claim is medical. Even when severe isolation is discussed, it appears through the language that's been done, you didn't give me medical care, one, because you didn't give me, we disagreed on the medication, but two, you didn't give me medical care based on the fact that I was in, considering that I was in severe isolation. Is that stated as an independent claim? I don't think that is. Counsel, that's the argument in your briefing, but we've just walked through, at the risk of repeating ourselves, with opposing counsel the other allegations where he says there's periodic review  This isn't a criticism, but it's there where he says that the periodic reviews were a sham. And he's got this separate Eighth Amendment violation really premised not on his pain management but on his mental health from prolonged isolation. And I guess the issue there comes between at what point, granted the general rule is we liberally construe what's in the complaint through screening, and I understand that. But there also comes the question as to how deep we're required to dig in liberal construction. How deep do you have to go when he says the periodic reviews violate substantive due process? Okay, the substantive probably doesn't belong there. It's probably just procedural due process. Or he just could have said due process. They're shams and meaningless. The periodic reviews are conducted with preordained outcomes. What more does he have to say to be clear? And names the defendant has nothing to do with the provision of medical care. It had nothing to do with medical care. I completely agree with Judge Vitaleano. Actually, I would say that it does have to do with medical care because they're saying they failed to provide me with adequate medical health services throughout my placement in severe isolation. And he talks about the devastating psychological and physical effects of it. That's where he starts. Then he goes into this discussion where I think this is also what you've already discussed. But that relates to his mental health condition that's supposedly treated by the medication that he's not receiving. Well, and again, his allegation is that he is not receiving it, when instead that's his allegation. And what was prescribed to his allegation is what was prescribed in lieu of the medication he demanded was something that did not work. Is there anything in the record that contests that? I believe it was, and I wish I could show you the page, but I don't because I recall what the records indicated through the treatment process were that, one, you had one doctor come up who said, look, after a number of increases of Welbutin, said, look, this guy's over the amount. And it started with a G.  There was a physician who said, look, the volume of Welbutrin this gentleman is getting is too much. I'm going to continue him on Welbutrin on a slightly reduced dosage, but I'm going to add another medication to this. And then Gavis came back and said, this isn't working, so let's try this. He claimed it didn't work. And then let's try this. And then he just flat refused to go further on it. So, I mean, I can address further questions on that. I can move forward. What would you like? Do you know offhand what the policy is in ADOC for the periodic reviews for people subject to disciplinary reasons as opposed to gang status? I've just got the medical folks. Unfortunately, I don't. Okay. Are you familiar with our opinion in Johnson v. Ryan? Not specifically, no. Issued in December. Okay. All right. Thank you. All right. So I think we've discussed the allegations, the appointment of counsel issue, Tramadol. I think we generally discussed Welbutrin. I think we've kind of discussed that here. On the issue of grievances, I don't know if there's a real issue to discuss here, except for the fact that, frankly, in two separate issues, grievances were granted if they thought it was incorrect or insufficient giving of medications. And when grievances were denied, they were largely based upon reading the medical records and saying, look, we've got a doctor who says this is the right thing to do. They're the professionals, so we're going to side with them. I think you have a strong argument as to the pain medication, and that's what you're particular because some grievances were granted in particular because it's such a very, very high standard. Is your strongest argument regarding solitary confinement that you think he didn't plead the claim? Basically, yes. I mean, it's, again, and I'm being as trying to be as objective as I can. You come to this question of liberal construction. He didn't plead the claim. Count two is insufficient medical care and against the medical providers. Count three is a recitation of two, but trying to provide a state claim. And those are the allegations which were made as to the medical defendants. We understand that there's litigation. I'm spacing on the caption of the case, but it's the ACLU's class action against ADOC. Is that on appeal? What's the status of that? Did you work out a consent decree? What's going on there? Khorizon ended up as a party in interest. They weren't the actual defendant. The state was. It started out as parsons. Did it deal with medical care or solitary confinement or both? It addressed a whole panoply of things. The statuses? Excuse me? And the status of it is? Yeah. Okay. Has Judge Silver issued a final order? I believe Judge Silver entered an order which said that there were discrepancies, and I forget which ones. They were going to go back up for review and be looked at at some point to determine compliance is my understanding. I know an order came out earlier this year. You don't know whether it's on appeal? That I do not know. Okay. And does it deal with the question of solitary confinement and the periodic reviews of those in solitary confinement? The thing I can't tell you is of the various issues whether solitary confinement was addressed. I think it was, but I can't tell you. The primary issues which I think were discussed were staffing, and they were treatment of psych and treatment of solitary. I seem to recall those were primary issues addressed in that. Very briefly, to the extent that that has weight as far as the overall care of the prisons, that's one thing. As far as adhering Parsons to this case, where I don't believe Corizo was an initial defendant, certainly none of the individuals were, although I don't remember if Ryan and Pratt were named as specific people. There's no indication that the specific claims here, other than this reference that he makes, that Mr. Gamez makes to confinement, are addressed in the class action itself. Excuse me. Do you have further questions, Judge Vitaleano? Do I need to address the state law issue or no? I can. You're over time, so we're going to let you wrap up there. Thank you so very much. Thank you. And we took you over time, by the way. I didn't mean to imply otherwise. Good morning. Good morning, Your Honors, and may it please the Court. My name is Krista Lanham. I'm an assistant United States attorney, and I represent the FBI defendants. Regardless of the outcome of this appeal as to the other defendants that Mr. Conlon is representing, the Court should decline to remand Mr. Gamez's First Amendment access to court's claim against the federal defendants. Even with the benefit of very able counsel on appeal, Mr. Gamez has failed to argue any legal basis for reversing the district court's grant of summary judgment as to the FBI defendants on actual injury grounds. Actual injury is necessary for standing in this context, and Gamez's failure to show the loss of any kind of arguable or non-frivolous claim, whether in the district court or even in the briefing here, means that the outcome of his case would be the same whether or not he had counsel or not as it relates to the FBI defendants. Judge Kristen, you noted that the appointment of counsel issue can really vary a lot by claim, and here the fact that he hasn't argued that summary judgment was improperly granted or made any kind of argument as to why it was improperly granted is fatal to the idea that he raises, which is an improper appointment of counsel just kind of clears the slate as a blanket reason for remanding. This is a claim-by-claim analysis, and he has not made any suggestion that summary judgment wasn't properly granted to the FBI defendants. Are there any questions? Thank you. Thank you. We'll hear from opposing counsel. We'll put two minutes on the clock. Thank you, Your Honor. I just wanted to begin with the question that Your Honor had about the status of the ACLU case. There was an April 7th injunction. My understanding is that there was an agreement not to take an appeal from that, so that stands, and then it will remain to be seen whether it's complied with, of course. I'm sorry, I couldn't hear the last thing you said. Obviously, if it's not complied with, there may be motion practice, but there is not an appeal. And does that question, does that litigation address the periodic review of solitary confinement? It does, Your Honor. Does that moot something here? It doesn't, Your Honor, because this is a 1983 claim for damages. You're asking for damages, not for injunctive relief. Correct, Your Honor. I did also want to address the question Your Honor had about insomnia. I now have the citation. Dr. Rastogi says in paragraph 10, which is at page 116 of the record, Plaintiff was not exhibiting any adverse effects in taking a dosage of 300 milligrams of wellbutrin in the evenings. And then paragraph 11 at 117 refers to an April 7th, 2017 appointment with Mr. Gomez, where he says that he's experiencing insomnia. But as the record reflects at ER 117 to 118, Dr. Rastogi continued the current dosage, notwithstanding that concern. Finally, I just wanted to say that I think there has been a fair amount of discussion about what the policies and procedures that Khorasan had in place are that is well outside of the record. And I think that really just underscores why Mr. Gomez needed counsel here to explore what the motives, in fact, were for those administrative policies and practices. Anything further? I guess not. We'll take that under advisement. I want to thank all counsel for your careful preparation. It's very, very helpful. We'll take it under advisement and go on to the next case on the calendar.
judges: BYBEE, CHRISTEN, Vitaliano